**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

**NOT FOR PUBLICATION**

_____
                                   :
**NEWARK BAY COGENERATION**          :
**PARTNERSHIP, LP,**                 :
                                   :
              **Plaintiff,**          :        **Civil Action 11-2441 (ES) (CLW)**
       **v.**                        :
                                   :
**ETS POWER GROUP,**                 :        **OPINION and ORDER**
                                   :
              **Defendant.**          :
_____:

**SALAS, DISTRICT JUDGE**

On June 29, 2012, Magistrate Judge Cathy Waldor issued a Report and Recommendation (the "R&R"), (D.E. No. 43), recommending that this Court grant Defendant ETS Power Group's ("Defendant" or "ETS") motion to compel arbitration.  (D.E. No. 27).  On July 13, 2012, Plaintiff Newark Bay Cogeneration Partnership, LP ("Plaintiff" or "Newark Bay") filed a timely objection to the R&R.  (D.E. No. 45).   On July 27, 2012, ETS filed its response.  (D.E. No. 46). Having carefully reviewed the Report and Recommendation and the submissions by the parties *de novo*, the Court hereby ADOPTS the R&R in part.  In addition to adopting the facts, the procedural history, the summary of the parties' arguments, the legal standard, and the legal conclusion to compel arbitration, the Court declines to adopt Judge Waldor's extraneous findings as to the merits of the contract formation and the incorporation of the Terms and Conditions beyond the arbitration provision.

1

Plaintiff first objects to the R&R stating that issues of fact preclude a determination on whether: (1) the arbitration provision should be incorporated into the relevant contracts, and (2) the agreement to arbitrate encompasses all of Plaintiff's allegations.  (*See* D.E. No. 45, Pl.'s Objections to Magistrate Judge's Report & Recommendation ("Pl. Obj.") 2).  Nonetheless, Plaintiff states that it agrees to arbitrate this matter in its entirety so long as the Court declines to adopt the R&R's analysis related to contract formation.  (*Id.*).  In response and in support of the R&R, ETS argues that: (1) the Court must determine the issues of contract formation; (2) Judge Waldor did not determine whether the Terms and Conditions were incorporated into the December 15, 2006 and February 16, 2007 purchase orders; and (3) the R&R does not preclude Plaintiff from advancing substantive defenses to the Terms and Conditions during the arbitration. (*See* D.E. No. 46, ETS Power Group's Resp. to Pl.'s Objections to Magistrate Judge's Report & Recommendation ("ETS Response") 1-2).

As an initial matter, Plaintiff's objection is conflicting and a bit confusing.  On one hand, Newark Bay appears to object to arbitration when it states that "material issues of fact exist regarding the incorporation of the arbitration provision into the relevant contracts."  (Pl. Obj. 2). In furtherance of its objection, Plaintiff appears to argue that two prior contracts that it claims did not incorporate the Terms and Conditions would not be subject Plaintiff to arbitration.  (*Id.*).  On the other hand, however, Plaintiff states that it has always agreed to arbitrate this matter.  (*Id.*). Notwithstanding, the substance of Plaintiff's objection relates, in large part, to whether Judge Waldor properly determined that the parties formed a contract.  (*Id.*).  After fully reviewing Plaintiff's objection, Newark Bay does not cite to any support in the record for its argument that issues of fact exist regarding the incorporation of the arbitration provisions.  In fact, Plaintiff

2

does not point this Court to a single disputed fact.  Despite its assertion that the two prior contracts did not incorporate the arbitration provision, Plaintiff fails to cite any support for its argument.  Without evidence of disputed material facts, the Court is unable to analyze Plaintiff's arguments as they relate to objections to Judge Waldor's determination that a valid arbitration clause existed.

The Court will now turn to the R&R to determine whether Plaintiff's objection that Judge Waldor went beyond her authority by focusing on the formation of the contract as a whole, rather than just the formation of the agreement to arbitrate, is valid.  To determine whether the parties have agreed to arbitrate, the Court will apply "ordinary state-law principles that govern the formation of contracts."  *First Options of Chi., Inc. v. Kaplan,* 514 U.S. 938, 944 (1955).  Therefore, before the Court may compel arbitration, the Court must determine "(1) whether a valid agreement to arbitrate exists; and (2) whether the particular dispute falls within the scope of that agreement."  *Trippe Mfg. Co. v. Niles Audio Corp.*, 401 F.3d 529, 532 (3d Cir. 2005) (internal citations omitted).

As Defendant correctly points out, the Court must determine the existence and the scope of an agreement to arbitrate.  *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 130 S. Ct. 2847, 2855-56 (2010).  Notably, the Court is limited to determining whether there is a valid agreement to arbitrate.  *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445-46 (2006) (stating "unless the challenge is to the arbitration clause itself, the issue of the contract's validity is considered by the arbitrator in the first instance").  It then follows that "a challenge to the validity of the contract as a whole, as opposed to the arbitration clause in particular, does not present a question of arbitrability."  *Quilloin v. Tenet HealthSystem Phila., Inc.*, 673 F.3d 221,

229 (3d Cir. 2012) (internal quotations & citations omitted).   In fact, the arbitration clause is severable from the rest of the contract, and the Court may separately enforce and determine an arbitration clause's validity.  *Id.*

In *Buckeye*, the plaintiffs alleged that the contract as a whole was illegal, but did not specifically challenge the arbitration provision.   546 U.S. at 446.   The Court found that the arbitrator should determine the issues of the illegality of the contract.  *Id.*  The Court explained that, "because respondents challenge the Agreement, but not specifically its arbitration provisions, those provisions are enforceable apart from the remainder of the contract."   *Id.* "The flip side of this rule, however, is that when a party specifically challenges the validity of arbitration provisions within a larger contract, apart from the validity of the contract as a whole, a court decides the threshold question of the enforceability of the arbitration provisions."  *Puleo v. Chase Bank USA, N.A.*, 605 F.3d 172, 180 n.4 (3d Cir. 2010) (internal quotations & citations omitted).

Here, Judge Waldor first set forth the standard by which a Court must determine whether the parties agreed to arbitration.  (R&R 9-10).   The Court agrees with Judge Waldor's recitation of the law.  Judge Waldor then analyzed whether there is a valid contract, in its entirety, between Newark Bay and ETS.  (*Id.* at 10-12).    It is at this stage in the analysis where the Court declines to adopt Judge Waldor's R&R in full.   Judge Waldor should have only considered the existence and scope of an agreement to arbitrate, not the existence and scope of the contract in its entirety between the parties.

Under New Jersey law, a valid contract exists where there is an offer, acceptance and consideration.  *MK Strategies, LLC v. Ann Taylor Stores Corp.*, 567 F. Supp. 2d 729, 735 (D.N.J.

2008) (internal citations omitted).  Accordingly, Judge Waldor considered the parties' course of dealing and found that Defendant's March 30, 2007 proposal was a valid offer (the "Offer") and Plaintiff's April 2, 2007 purchase order was its acceptance (the "Acceptance").  (*Id.* at 11). Importantly, neither the Offer nor the Acceptance explicitly contained an arbitration clause.  (*Id.* at 12).  Instead, the Offer provided that Defendant's "standard terms and conditions of sale" applied.  (D.E. No. 27-2 Declaration of Barry J. Muller, Esq. ("Muller Cert."), Ex. B).  The Terms and Conditions contain 22 clauses, one of which is an arbitration clause, providing for arbitration in Zurich.  (Muller Cert., Ex. E).

Accordingly, Judge Waldor then considered whether the Terms and Conditions were incorporated by reference by the language in the Offer referencing them.  (R&R 12-17).  Judge Waldor determined that the Terms and Conditions were valid because the Offer "clearly and unambiguously" referred to them.  (*Id.* at 14).  Judge Waldor relied upon the plain language of the Offer and testimony from one of Plaintiff's representatives.  (*Id.* at 14-15).

The Court agrees with Judge Waldor's analysis and determination that the parties agreed to arbitrate.  Judge Waldor's analysis about the Offer and Acceptance and the incorporation of the Terms and Conditions is adopted, however, the Court will only adopt this analysis as it relates to the arbitration clause found in the Terms and Conditions.  The Court declines to determine whether the parties formed a contract outside of the agreement to arbitrate.  All other issues of contract formation will be determined by the arbitrator.   The parties have not objected to Judge Waldor's analysis as it relates to the agreement to arbitrate, nor do they object to the analysis of the scope of the arbitration clause.

For the above reasons, as well as the reasons set forth by Magistrate Judge Waldor adopted by this Opinion, the Court grants ETS's motion to compel arbitration.

## <u>ORDER</u>

IT IS on this 28th day of September 2012 ORDERED as follows:

1. The Report and Recommendation of Magistrate Judge Waldor is hereby adopted in part—as explained in the above Opinion—as the opinion of this Court; and it is further ordered that

2. Defendant's Motion to Compel Arbitration is GRANTED; and it is further ordered that

3. The Clerk of Court shall terminate the motion at Docket Entry No. 27 decided in this Opinion and Order;  and it is further ordered that

4. The Clerk of Court shall terminate the Report and Recommendation of Magistrate Judge Waldor at Docket Entry No. 43.


<u>s/Esther Salas</u>
**Esther Salas, U.S.D.J.**


## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

### <u>NOT FOR PUBLICATION</u>

|  |  |
|---|---|
| NEWARK BAY COGENERATION PARTNERSHIP, LP | : |
| : | Civil Action No. 11-2441 (ES)(CLW) |
| Plaintiff, | : |
| : | **<u>REPORT & RECOMMENDATION</u>** |
| v. | : |
| : | |
| ETS POWER GROUP, | : |
| : | |
| Defendant. | : |

_____:

**WALDOR, UNITED STATES MAGISTRATE JUDGE**

Pending before this Court is a motion to compel arbitration ("Motion to Compel Arbitration") brought by Defendant ETS Power Group ("Defendant" or "ETS").  (Docket Entry No. 27).  Plaintiff Newark Bay Cogeneration Partnership, LP ("Plaintiff or "Newark Bay") has filed opposition to the Motion to Compel Arbitration.  (Docket Entry No. 29).  The Court decides the motion after having heard oral argument pursuant to Fed. R. Civ. P. 78.  District Judge Salas referred Defendant's Motion to Compel Arbitration to the Undersigned for Report and Recommendation.  For the reasons set forth below, the Court respectfully recommends that Defendant's Motion to Compel Arbitration be **GRANTED.**

### I.  Background

Plaintiff is a privately held independent power producer organized and existing under the laws of the state of New Jersey.  (Docket Entry No. 1, Complaint, ("Compl.") at ¶1).  Plaintiff operates as a merchant plant and sells electricity to the Pennsylvania, New Jersey, and Maryland markets and power grid.  (Id. at ¶ 9).  Plaintiff produces electricity utilizing two Westinghouse CB251 combustion turbines ("CT1" and "CT2").  (Id. at ¶ 10).  Each CT is equipped with a 19 stage compressor consisting of a casing, which houses the compressor's diaphragms and stationary vanes.  (Id. at ¶ 11).  On June 1, 2006, CT2 experienced a failure of a stage 1 compressor blade.  (Id. at ¶ 12).  Westinghouse was unable to provide replacement diaphragms necessary to rebuild CT2.  (Id. at ¶ 14).

Defendant is a Florida corporation engaged in the business of providing OEM equivalent parts for industrial gas turbines.  (Id. at ¶¶ 2-3).  Following the 2006 loss, Defendant represented

that it could "reverse engineer" the diaphragms and provide replacement diaphragms that would conform to the original Westinghouse design and be suitable for use within CT2.  (Id. at ¶ 15). Plaintiff ultimately hired Defendant to complete the necessary repair and replacement work.  (Id. at ¶ 16).

On January 12, 2010, CT2 tripped.  (Id. at ¶ 27).  Plaintiff's inspection revealed damage in the CT2 compressors starting at stage 6.  (Id. at ¶ 28).  In particular, the stage 6 diaphragm had lost several vanes that caused damage to downstream compressor blades and vanes.  (Id. at ¶ 31). Plaintiff alleges that further inspection revealed that all of the failed diaphragms were manufactured and supplied by ETS as part of the 2006 CT2 repair and resulted from ETS' failure to meet proper specifications.  (Id. at ¶¶ 32-36).  As a result of the alleged failure of the ETS diaphragms, Plaintiff contends it sustained damages in an amount in excess of $4,538,870.  (Id. at ¶ 37).  Accordingly, on April 28, 2011, Newark Bay brought action against ETS alleging:  (1) breach of contract; (2) breach of express warranty; (3) breach of implied warranty of merchantability; (4) breach of implied warranty of fitness for an intended purpose; (5) negligence; (6) products liability; and (7) gross negligence.  (Compl. at ¶¶ 38-80).

The central issue currently before this Court concerns a series of purchase orders ("Purchase Order" or "Purchase Orders") memorializing the above-described agreement to perform the requested – and allegedly defective – work and whether the agreement between the parties evidences a valid agreement to arbitrate the pending dispute.  First, pursuant to a December 15, 2006 Purchase Order, ETS inspected the CT2 compressor and diaphragms to determine whether it could repair and/or reverse engineer the diaphragms.  (Compl., Ex. A, Dec. 15, 2006 Purchase Order).  Next, pursuant to a February 16, 2007 Purchase Order, ETS created

8

detailed dimensional diagrams and drawings of the diaphragms and vane segments for the purpose of facilitating repair of the diaphragms by a repair facility.  (Id., Feb. 16, 2007 Purchase Order).  Lastly, and of particular import, on March 30, 2007, ETS provided Plaintiff with a written price quote to repair or replace the damaged diaphragms for the CT2 compressor. (Motion to Compel Arbitration at ¶ 14).  The offer was valid for 90 days and provided that ETS' "standard terms and conditions of sale" applied.  (Id., Muller Certification ("Cert."), Ex. B.). Specifically, the ETS Terms & Conditions ("T&C") require the parties to resolve all disputes arising in connection with the contract through arbitration:

> 10.1 Dispute Resolution.  All disputes arising in connection with the Contract shall be settled, if possible, by negotiation of the parties.  If settlement cannot be reached by negotiation, then the dispute shall be finally settled by arbitration without recourse to common or commercial courts.  Each party shall have the right to send a request in writing, with notices to the other party, to the President of the International Chamber of Commerce stating its desire to resolve the dispute before an arbitration panel of three arbitrators appointed by the President of the ICC under its rules.  Subject to the terms of Company's proposal or the Contract, the arbitration will be held in London, England and shall apply the laws of England, provided that any provision of such law invalidating any provision of the Contract or modifying the intent of the parties as expressed in the terms of the Contract shall not apply.

T&C § 10.1.

On April 2, 2007, Plaintiff executed a Purchase Order for the replacement parts.  (Motion to Compel Arbitration at ¶ 13).  The parties dispute the meaning and intent of the April 2, 2007 Purchase Order.  ETS contends that Plaintiff's April 2, 2007 Purchase Order specifically references ETS' March 30, 2007 quotation, without the rejection or proposal of different terms or conditions. (Motion to Compel Arbitration at ¶ 21).  Plaintiff believes ETS' interpretation of its April 2, 2007 Purchase Order goes beyond its intended scope.  (Docket Entry No. 29 at 8-9).  To that end, the sole reference in the Purchase Order to the March 30, 2007 proposal is, "T&M not

9

to exceed ETS proposal dated 3/30/07." (Id.).  Accordingly, the Purchase Order's reference to the ETS proposal is limited to ETS' proposed cost for the work on a time and material basis and cannot be read as an incorporation of the entirety of the proposal letter or the undisclosed T&C that are mentioned in that letter.  (Id.)

On July 5, 2011, ETS moved to compel arbitration and stay this litigation.  (Docket Entry No. 15).  Plaintiff opposed ETS' application alleging that it never agreed to the ETS T&C and, therefore, said T&C did not bind the Plaintiff.   (Docket Entry No. 16).  On January 6, 2012, this Court entered an order permitting discovery on the issue of contract formation, limited to the depositions of the two individuals who negotiated the agreement, the applicability of the ETS T&C, as well as the custom and practice in the industry regarding the existence of standard terms and conditions and preference for arbitration.  (Docket Entry No. 26).

On February 7, 2012, ETS filed the instant renewed Motion to Compel Arbitration. (Docket Entry No. 27).  On February 21, 2012, Newark Bay filed a brief in opposition (Docket Entry No. 29, "Pl.'s Opp. Br."), on February 28, 2012, ETS filed its reply brief (Docket Entry No. 30, "Def.'s Reply Br."), and, on March 19, 2012, Newark Bay filed a sur reply in opposition (Docket Entry No. 34, "Pl.'s Sur Reply").  The Motion to Compel Arbitration was referred to the Undersigned on April 10, 2012.

## II.     Standard of Review

Motions to compel arbitration are reviewed under the summary judgment standard of Fed. R. Civ. P. 56(c).  Bellevue Drug Co. v. Advance PCS, 333 F.Supp.2d 318, 322 (E.D.Pa. 2004); Par-Knit Mills, Inc. v. Stockbridge Fabrics Co., 636 F.2d 51, 54 n.9 (3d Cir. 1980).  A court shall grant summary judgment under Rule 56(c) of the Federal Rules of Civil Procedure "if

the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  A factual dispute is genuine if a reasonable jury could find for the non-moving party, and is material if it will affect the outcome of the trial under governing substantive law.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256-57 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).  In determining whether a genuine issue of material fact exists, the court must view the facts and all reasonable inferences drawn from those facts in the light most favorable to the nonmoving party.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); Curley v. Klem, 298 F.3d 271, 276-77 (3d Cir. 2002).

Initially, the moving party has the burden of demonstrating the absence of a genuine issue of material fact.  Celotex Corp., 477 U.S. at 323.  Once the moving party has met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue of fact for trial.  Id.  Thus, to withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party.  Anderson, 477 U.S. at 256-57.  "A nonmoving party may not 'rest upon mere allegations, general denials or . . . vague statements . . . .'"  Trap Rock Indus., Inc. v. Local 825, Int'l Union of Operating Eng'rs, 982 F.2d 884, 890 (3d Cir. 1992) (citation omitted).  Moreover, the non-moving party must present "more than a scintilla of evidence showing that there is a genuine issue for trial."  Woloszyn v. County of Lawrence, 396 F.3d 314, 319 (3d Cir. 2005).  Applying this summary judgment standard, the Court proceeds to an analysis of ETS' Motion to Compel Arbitration.

**III.  Analysis**

The Federal Arbitration Act ("FAA") reflects a "strong federal policy in favor of the resolution of disputes through arbitration." Alexander v. Anthony Int'l, L.P., 341 F.3d 256, 263 (3d Cir. 2003). The FAA provides that "[a] written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of the contract." 9 U.S.C. § 2. The Supreme Court has made clear that "the central or primary purpose of the FAA is to ensure that private agreements to arbitrate are enforced according to their terms." Stolt-Nielsen v. Animal Feeds Int'l Corp., --- U.S. ----, 130 S.Ct. 1758, 1773, 176 L.3d2d 605 (2010) (internal citations omitted). "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or any allegation of waiver, delay, or a like defense to arbitrability." Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). However, this presumption in favor of arbitration "does not apply to the determination of whether there is a valid agreement to arbitrate between the parties." Kirleis v. Dickie, McCamey & Chilcote, P.C., 560 F.3d 156, 160 (3d Cir. 2009) (quoting Fleetwood Enters. Inc. v. Gaskamp, 280 F.3d 1069, 1073 (5th Cir. 2002)).

To determine whether the parties agreed to arbitrate, the Court turns to "ordinary state-law principles that govern the formation of contracts." First Options of Chic. Inc. v. Kaplan, 514 U.S. 938, 944, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995). See also Blair v. Scott Speciality Gases, 283 F.3d 595, 603 (3d Cir. 2002). Newark Bay and ETS agree that New Jersey law applies here. Because arbitration is a matter of contract, John Wiley & Sons, Inc. v. Livingston, 376 U.S. 543, 547, 84 S.Ct. 909, 11 L.Ed.2d 898 (1964), before compelling arbitration pursuant to the FAA, a

court must determine that (1) a valid agreement to arbitrate exists, and (2) the particular dispute falls within the scope of that agreement.  Trippe Mfg. Co. v. Niles Audio Corp., 401 F.3d 529, 532 (3d Cir. 2005).

**A.  Is There a Valid Arbitration Agreement?**

I.        There is a Valid Contract Between Newark Bay and ETS:

As an initial matter, the Court finds that a valid contract exists between Newark Bay and ETS.  Under New Jersey law, the basic elements of a valid contract are:  (1) an offer by the promisor to act or forebear in some way; (2) acceptance by the promisee of the promisor's offer; and (3) fair consideration paid by the promisee in exchange for the promisor's performance. Taha v. Tires Plus, No. 10-4118, 2011 WL 229330 (D.N.J. June 8, 2011) (citing Am. Handkerchief Corp. v. Frannat Realty Co., 17 N.J. 12, 109 A.2d 793, 795-96 (N.J. 1954) (discussing contract formation under New Jersey law)).  "The essentials of a valid contract are: mutual assent, consideration, legality of object, capacity of the parties and formality of memorialization."  Cohn v. Fisher, 118 N.J.Super. 286, 291, 287 A.2d 222 (Law Div. 1972). Additionally, purchase orders can create a binding contract.  See Promotion in Motion, Inc. v. Beech-Nut Nutrition Corp., No. 09-1228, 2011 WL 6372323 (D.N.J. Dec. 20, 2011) ("As a matter of law, the Court finds that the Purchase Orders are valid and enforceable contracts.") (citing U.C.C. § 2-201; Kay-Bee Toys Corp. v. Winston Sports Corp., 214 A.D. 2d 457, 458 (N.Y.App. Div. 1995) ("Purchase orders may create a binding contract.")).

Here, on April 2, 2007, Newark Bay issued a written Purchase Order specifically referencing and accepting the March 30, 2007 proposal.  The proposal – the offer – and the Purchase Order – the acceptance – required ETS to provide repair and replacement services for

13

the Newark Bay compressor diaphragms and seals.  Accordingly, ETS had discernible duties or obligations under the proposal and corresponding Purchase Order.  See Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc., 421 F.Supp.2d 831 (D.N.J. 2006) ("The offer must contemplate the assumption of legal rights and duties and must show a clear intention to assume liability.") (citation omitted).  Further, there is no question that ETS received consideration from Plaintiff pursuant to this transaction, specifically, $846,879.  (Docket Entry No. 1, Ex. A, Apr. 2, 2007 Purchase Order).  In sum, in executing the above documents, both parties manifested an intent to be bound.  The Court finds, as a matter of law, that a valid contract exists between Newark Bay and ETS.

The fact that ETS describes the March 30, 2007 offer as a "quotation" in the subject line of its offer does not change this Court's analysis.  Plaintiff argues that "Under the UCC, a 'price quote' is not necessarily an offer."  (Pl.'s Opp. Br. at 22).  Plaintiff is correct.  Generally, "[W]hat transforms the quotation into an offer cannot be neatly defined; it depends on the manifestation of intent by the seller and the 'unique facts and circumstances of each case.'" Reilly Foam Corp. v. Rubbermaid Corp., 206 F.Supp.2d 643, 650-51 (E.D.Pa. 2001).  Here, however, the price quote is an unequivocal offer.  First, the March 30, 2007 ETS letter states "ETS Power Group is pleased to **offer** . . . "  The letter also includes a number of specific terms including the identification of products, quantities, pricing, timing, and reference to standard terms and conditions.  Newark Bay treated the letter as an offer in regard to, at a minimum, price and quantity.  The April 2, 2007 Purchase Order merely modified the March 30, 2007 proposal in that Newark Bay agreed to pay only the lower estimate offered by ETS.  Looking to the plain language of the March 30, 2007 letter and viewing the transaction as a whole, both parties treated

14

the price quote as an offer and not merely a quotation.  Accordingly, the Court finds the March 30, 2007 correspondence contains sufficient detail and is deemed an offer as a matter of law.

## II.        Incorporation by Reference:

Although a valid contract exists between Newark Bay and ETS, in the absence of an express agreement to arbitrate in the Purchase Order itself, the Court must determine whether the parties agreed to incorporate the arbitration provision by reference.  New Jersey law provides that "two or more writings may constitute a single contract even though they do not refer to each other.  Whether two writings are to be construed as a single contract, however, depends on the intent of the parties."  Van Orman v. Am. Ins. Co., 680 F.2d 301, 306 (3d Cir. 1982) (internal citations omitted).  The basic question is whether the parties assented to a writing as the complete integration of their agreement.  Lawrence v. Tandy & Allen, Inc., 14 N.J. 1, 7, 100 A.2d 891 (1953).  In sum, "[i]n order for there to be a proper and enforceable incorporation by reference of a separate document, the document to be incorporated must be described in such terms that its identity may be ascertained beyond doubt and the party to be bound by the terms must have had 'knowledge of and assented to the incorporated terms.'"  Guidotti v. Legal Helpers Debt Resolution, L.L.C., No. 11-1219, 2011 WL 6720936, at *16 (D.N.J. Dec. 20, 2011) (quoting Alpert v. Quinn, 410 N.J.Super. 510, 533, 983 A.2d 604 (App.Div. 2009)).  See also, 4 Williston on Contracts § 30:25 (Lord ed. 1999).

In support of incorporation, ETS argues that when Newark Bay accepted its March 30, 2007 proposal – which included the ETS T&C – a valid contract was formed on ETS' terms. (Motion to Compel Arbitration at 8-9).  See Standard Bent Glass Corp. v. Glassrobots Oy, 333 F.3d 440, 447 (3d Cir. 2003).  Defendant specifically relies on the following language:  "The

seller's terms may include documents or provisions incorporated by reference into the main agreement.  Traditional documents incorporated by reference into contracts include accepted industry guidelines or parallel agreements between the parties."  Id.  To that end, ETS contends that whether or not the ETS T&C were attached to ETS' March 30, 2007 proposal is of no moment.  Instead, parties to a contract are free to incorporate by reference, and bind themselves to, terms that may be found in other documents.  (Motion to Compel Arbitration at 9, citing Aceros Prefabricados, S.A. v. TradeArbed, Inc., 282 F.3d 92, 100 (2d Cir. 2002)).  Moreover, Newark Bay's failure to read a contract or request referenced terms within that contract does not excuse it from being bound by its terms, particularly where the Plaintiff is a sophisticated commercial party.  (Id. at 11-13).

Plaintiff disagrees and argues that the arbitration provision was not incorporated by reference because ETS neither provided a copy of the T&C with the executed contract nor did Newark Bay acknowledge that it had read and agreed to the T&C.  (Pl.'s Opp. Br. at 6).  Specifically, ETS cannot establish that Newark Bay assented to the incorporation of the T&C as required under both state and federal law.  (Id.).  Instead, the Purchase Order does not reference the arbitration provision or, more broadly, the T&C.  In fact, the sole reference to the ETS March 30, 2007 proposal is limited to ETS' proposed cost for the work on a time and material basis.  Accordingly, said language cannot be read as an incorporation of the entirety of the proposal letter or the undisclosed terms and conditions that are mentioned in that letter.  (Id. at 9).

The Court finds that ETS has the better argument.  The T&C are valid and were effectively incorporated by reference into the March 30, 2007 proposal.  First, the T&C are clearly and unambiguously referred to in ETS' March 30, 2007 proposal.  That is to say, the

16

document to be incorporated was "described in such terms that its identity may be ascertained beyond doubt." Guidotti, 2011 WL 6720936, at * 16.  Specifically, the March 30, 2007 proposal reads:

> This quotation is based on best efforts estimates of repairs and replacements, it is valid for 90 days and is **based on our standard terms and conditions of sale.**

(Muller Cert., Ex. B) (emphasis added).[1]

Moreover, Newark Bay had knowledge of the T&C and assented to their incorporation by executing the April 2, 2007 Purchase Order.  Specifically, the testimony of Mr. Joseph Mitchell, consultant for Newark Bay, confirms that Mr. Mitchell provided the March 30, 2007 proposal to Newark Bay Vice President Timothy Fagan:

> **Q**:  And by the way, do you recall receiving [the March 30, 2007] proposal from ETS?
> **Mr. Mitchell**:  Yes.
> **Q**:  Okay.  And when you received it, did you share it with anyone or give it to anyone?
> **Mr. Mitchell**:  Yes.
> **Q**:  To whom did you give it?
> **Mr. Mitchell**:  Tim Fagan.

(Muller Cert., Ex. A., 54:16-20; 16:18-24).  On April 2, 2007, Mr. Fagan signed the Purchase Order which clearly references the March 30, 2007 proposal, expressly noting the T&C.  Although proposing changes to the March 30, 2007 proposal, Newark Bay did not alter or respond to the reference to the T&C nor ask for them.  In sum, the above language unequivocally put Newark Bay on notice of the conditions that were to apply to this transaction.  Mr. Fagan

---

[1] This is in stark contrast to cases in which a court rejected a party's attempt to incorporate a separate provision by reference.  See, e.g., Weiner v. Mercury Artists Corp., 284 A.D. 108, 130 N.Y.S.2d 570, 571 (N.Y.App.Div.1954) (rejecting incorporation by reference where a seller attempted to incorporate a 207-page booklet into a one-page contract, and then tried to avail itself of an arbitration clause buried on page 66 of the booklet, with no other mention of arbitration).

reviewed the March 30, 2007 proposal and accepted said proposal, thus assenting to its terms, when he signed the April 2, 2007 Purchase Order.

As noted above, Newark Bay argues that because ETS neither provided a copy of the T&C with the executed contract nor did Newark Bay acknowledge that it had read and agreed to the T&C, Newark Bay should not be bound by the T&C.  Specifically, Mr. Fagan avers that:  (1) at no time before or after Newark Bay engaged ETS did ETS provide Newark Bay with any standard terms and conditions of sale; (2) had Newark Bay known that the arbitration provision contained in the standard terms and conditions required arbitration in London, England, pursuant to the rules of the ICC, and subject to the laws of England, it would not have agreed to enter the agreement with ETS; and (3) had Newark Bay known the standard terms and conditions were onerous and one-sided, particularly with respect to warranties, it would have never agreed to enter the agreement with ETS.  (Docket Entry No. 16, Ex. A, ¶¶ 3-5).

However, failure to read or review the T&C does not render them invalid.  <u>See</u> <u>Glassrobots Oy</u>, 333 F.3d at 447-48.  In <u>Schwartz v. Comcast Corp.</u>, 256 Fed Appx. 515 (3d Cir. 2007), Plaintiff, a Comcast subscriber, sued Defendant alleging that Comcast breached its contract with him by failing to provide high-speed internet services as promised.  Comcast filed a motion to compel arbitration based on the inclusion of an arbitration clause in the Comcast subscriber agreement.  Plaintiff disputed the applicability of the arbitration provision because he allegedly never received a copy of the subscriber agreement.  <u>Id.</u> at 518.  The Third Circuit held that the parties' relationship was governed by the subscriber agreement, and therefore was a valid agreement to arbitrate:

> Whether or not Schwartz received a copy of the subscription agreement, he could not accept services he knew were being tendered on the basis of a subscription

agreement without becoming bound by that agreement.  Restatement (Second) of Contracts § 23 (1981) ("[W]here an offer is contained in a writing [a party] may, without reading the writing, manifest assent to it and bind himself without knowing its terms. . . . [A]n offeror or offeree who should be aware of [the terms of a writing] may be bound in accordance with them if he manifests assent.").

Id. at 518.  Here, as established above, Mr. Fagan was aware that the March 30, 2007 proposal was being offered pursuant to the ETS T&C.  Mr. Fagan accepted the proposal by signing the April 2, 2007 Purchase Order.  Accordingly, despite the fact that ETS never provided their T&C to Newark Bay, Mr. Fagan was bound to the terms contained in the March 30, 2007 proposal once he manifested assent.  Id.  New Jersey law is consistent with this principle.  See Gras v. Assoc's First Capital Corp., 346 N.J.Super.42, 56 (App.Div. 2001) ("Failing to read a contract does not excuse performance unless fraud or misconduct by the other party prevented one from reading.") (internal quotation and citation omitted); 66 VMD Assoc's, LLC v. Melick-Tully and Assoc's, P.C., No. L-6584-07, 2011 WL 3503160, at *6 (App.Div., Aug. 11, 2011) ("[A] party accepting an offer has an absolute duty to read and understand the terms of an offer, and failure to do so will not diminish the force and effect of the resulting contract.").

Moreover, as ETS correctly notes, this principle is amplified when the transaction involves sophisticated commercial parties.  Mr. Fagan, the Vice President of Newark Bay, is responsible for overall management of the Newark Bay Power Station and involved in all operational and financial decisions at Newark Bay.  (Docket Entry No. 16, Ex. A, ¶ 1).  No one disputes that Mr. Fagan is a seasoned and sophisticated commercial party.  As a seasoned merchant, once Mr. Fagan reviewed the March 30, 2007 proposal, the onus was on Mr. Fagan to procure the T&C to the extent he sought to challenge their applicability or scope.  The Third Circuit instructs us to hold sophisticated commercial parties to higher standards:

> [T]he goal of commercial contract law is to efficiently facilitate business transactions between seasoned merchants.  It is appropriate to require a merchant to exercise a level of diligence that might not be appropriate to expect of a non-merchant.

Glassrobots Oy, 333 F.3d at 447 n. 10.  Accordingly, Newark Bay's failure to object to the T&C, including the arbitration provision, absent surprise or hardship, makes those terms part of the contractual agreement.  Glassrobots Oy, 333 F.3d at 447-48. [2]

### III.   Material Alteration of the Contract:

Newark Bay argues that even if the arbitration provision is incorporated by reference, it materially alters the terms of the agreement and should not be included.  "Even in a commercial transaction, a provision will not be incorporated by reference if it would result in surprise or hardship to the party against whom enforcement is sought."  Glassrobots Oy, 333 F.3d at 448; N.J.S.A. 12A:2-207. [3]  A material alteration is one that would "result in surprise or hardship if

---

[2] This Court has reviewed the case law cited to by Plaintiff supporting its position that this Court should reject the incorporation of the arbitration provision and has, moreover, conducted an independent review of the relevant New Jersey case law.  See Alpert, 410 N.J. Super at 534; Curtis v. Cellco Partnership, 413 N.J. Super. 26, 992 A.2d 795 (App.Div. 2010);  Garfinkel v. Morristown Obstetrics & Gynecology Assocs., P.A., 168 N.J. 124, 132, 773 A.2d 665 (2001); GMAC v. Pittella, No. L-2934-08, 2010 WL 2089981 (App.Div. 2010); Wilson v. Woodfields at Princeton Highlands, No. L-6262-07, 2011 WL 2409369 (App.Div. 2011); Morando v. Netwrix Corp., No. 11-5075, 2012 WL 1440229 (D.N.J. Apr. 24, 2012).  A review of the foregoing case law reveals a telling pattern.  In each of these cases in which the party seeking to compel arbitration was required to make a heightened showing of clarity or definiteness, the parties to the suit possessed uneven bargaining power – e.g. customers of the Defendant or employees of the Defendant.  This Court is not faced with the same policy considerations as we are dealing with two sophisticated business entities.  See Hayden v. Hartford Life Ins. Co., No. 10-3424, 2010 WL 5140015, at *7 (D.N.J. Dec. 10, 2010) (noting that the New Jersey Supreme Court's requirement that arbitration provisions contain more explicit and precise language was limited to certain contexts where strong public policy considerations exist, *i.e.,* employment discrimination).  Accordingly, the New Jersey case law on which Newark Bay purportedly relies – or on which it invoked albeit without referencing comprehensively – is factually distinguishable from the instant matter.  Cf. Lyndhurst Board of Education v. Network Billing Systems, LLC, No. C-325-09, 2011 WL 2339669, at *5 (App.Div. June 15, 2011) (finding that Plaintiff's reliance on case law in the context of consumer contracts was misplaced where the Plaintiff was a seasoned negotiator – "not [a random customer]" – and had negotiated the subject contract for a period of months).

[3] U.C.C. § 2-207 provides:

> (1)   A definite and seasonable expression of acceptance or a written confirmation which is sent within a reasonable time operates as an acceptance even though it states terms additional to or

incorporated without express awareness by the other party."  N.J.S.A. 12A:2-207.  With respect

to surprise, the Second Circuit has stated:

> Surprise includes both a subjective element of what a party actually knew and an
> objective element of what a party should have known. . . . A profession of
> surprise and raised eyebrows are not enough.  Instead, to carry its burden, the
> nonassenting party must establish that, under the circumstances, it cannot be
> presumed that a reasonable merchant would have consented to an additional term.

Aceros Prefabricados, 282 F.3d at 100 (quotations omitted).  As to unreasonable hardship, the

court considers "whether the clause at issue would impose substantial economic hardship on the

nonassenting party."  Bayway Refining Co. v. Oxygenated Mktg. & Trading A.G., 215 F.3d 219,

224 (2d Cir. 2000) (citations omitted).  "The nonassenting party has the burden of proving

surprise or hardship."  Rocheux Intern. Of N.J., Inc. v. U.S. Merchants Fin. Group, Inc., 741

F.Supp.2d 651, 682 (D.N.J. 2010) (quoting American Ins. Co. v. El Paso Pipe & Supply Co., 978

F.2d 1185, 1190 n.9 (10th Cir. 1992)).  See Bayway Ref. Co. v. Oxygenated Mktg. & Trading

A.G., 215 F.3d 219. 223 (2d Cir. 2000).

　　　　As an initial matter, the Court need not engage in an examination of whether the

arbitration provision is part of the parties' contract pursuant to Section 2-207(2).  Section 2-207

applies to additional or different terms contained in either a "definite and seasonable expression

of acceptance" or a "written confirmation."  N.J.S.A. 12A:2-207.  Here, ETS sent Newark Bay a

written Compressor Diaphragms and Seals Repair/Replacement Quotation.  This exchange

---

　　　　　　different from those offered or agreed upon, unless acceptance is expressly made conditional
　　　　　　on assent to the additional or different terms.
　　(2)　The additional terms are to be construed as proposals for addition to the contract.  Between
　　　　　　merchants such terms become part of the contract unless:
　　　　　　　　(a)　the offer expressly limits acceptance to the terms of the offer;
　　　　　　　　(b)　they materially alter it; or
　　　　　　　　(c)　notification of objection to them has already been given within a reasonable time
　　　　　　　　　　after notice of them is received.

N.J.S.A. 12A:2-207.

represented an **offer** from Newark Bay to repair and/or replace the Newark Bay compressor diaphragms and seals.  (Muller Cert., Ex. B).  The ETS offer explicitly referenced the ETS T&C. (Id.).  On April 2, 2007, Newark Bay responded by enclosing a signed Purchase Order accepting the ETS offer without objecting to the T&C.  (Docket Entry No. 1, Ex. A, Apr. 2, 2007 Purchase Order).  As such, and as discussed at length above, the T&C were part of the original terms offered by ETS and accepted by Newark Bay.  The T&C, therefore, do not represent additional or different terms in either a "definite and seasonable expression of acceptance" or a "written confirmation" that require interpretation under Section 2-207(2).  N.J.S.A. 12A:2-207.

Even if the Court were to engage in the analysis Newark Bay asks of it, the arbitration provision would still be part of the parties' contract.  To that end, Newark Bay's only evidence of surprise or hardship is its Vice President Timothy Fagan's affidavit that he never received a copy of the ETS T&C and would not have agreed to be bound to arbitration in London, England, pursuant to the rules of the ICC, and subject to the laws of England.  (Docket Entry No. 16, Ex. A, ¶¶ 3-5).  Viewing the facts in favor of Newark Bay, this evidence is insufficient to prove surprise or hardship.  The relevant portion of the arbitration provision reads:

> Each party shall have the right to send a request in writing, with notices to the other party, to the President of the International Chamber of Commerce stating its desire to resolve the dispute before an arbitration panel of three arbitrators appointed by the President of the ICC under its rules.  Subject to the terms of Company's proposal or the Contract, the arbitration will be held in London, England and shall apply the laws of England, provided that any provision of such law invalidating any provision of the Contract or modifying the intent of the parties as expressed in the terms of the Contract shall not apply.

T&C § 10.1.  Newark Bay and ETS operate in an international industry in which only 10 to 12 of the 52 CTs manufactured by Westinghouse worldwide are available in the United States. (Motion to Compel Arbitration at 24).  Accordingly, it should come as no surprise to either party

if arbitration disputes are resolved in international forums.  To that end, submission of disputes to international arbitration is common in this industry.[4]  See Glassrobots Oy, 333 F.3d at 448 (considering industry norms in determining whether arbitration provision was reasonable); Aceros, 283 F.3d at 102 ("standard industry practices are always relevant when interpreting contracts governed by the UCC. . . .").  Newark Bay is a sophisticated commercial entity.  If Newark Bay took issue with any costs or inconvenience associated with the ETS arbitration provision, it was free to reject the proposal or make a counter-offer.  In sum, even if the arbitration provision was considered a proposed additional term, it did not constitute a material alteration of the parties' contractual relationship.

## B.  Are Plaintiff's Claims within the Scope of the Parties' Arbitration Agreement?

Having determined that there is a valid agreement to arbitrate that can be enforced between Newark Bay and ETS, the next inquiry is whether Newark Bay's claims fall within the scope of the arbitration clause.  The Court must resolve the arbitrability issue with a "healthy regard for the federal policy favoring arbitration," and thus resolve "any doubts concerning the scope of arbitrable issues . . . in favor of arbitration."  Moses H. Cone Mem'l Hosp., 460 U.S. at 24-25.  "In determining whether the particular dispute falls within a valid arbitration agreement's scope, there is a presumption of arbitrability[:] an order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is

---

[4] Such standard terms and conditions include:  (1) Turbine Blading Limited Standard Terms and Conditions § 12 ("Subject to the terms of Company's proposal or the Contract, the arbitration will be held in London, England and shall apply the laws of England . . . )(Muller Cert., Ex. G, ¶ 12);  (2) Wood Group 2011 Standard Terms and Conditions (providing that if parties cannot internally resolve a dispute, "[it] shall be resolved by arbitration in Zurich in accordance with the Swiss Rules of International Arbitration (Swiss Rules) of the Swiss Chambers of Commerce.") (Id., Ex. E, ¶ 22.6); (3) Turbocare Gas Turbine Services, LLC Standard Terms and Conditions (parties who are unable to reach settlement shall have disputes "finally resolved by binding arbitration in accordance with the Rules of Conciliation and Arbitration of the International Chamber of Commerce.") (Id., Ex. H, ¶ 12).

not susceptible of an interpretation that covers the asserted dispute." Century Indem. Co. v. Certain Underwriters at Lloyd's, London, 584 F.3d 513, 524 (3d Cir. 2009) (citation omitted). Consequently, any doubts as to whether a dispute is covered by an arbitration agreement is resolved in favor of arbitration. Battaglia v. McKendry, 233 F.3d 720, 727 (3d Cir. 2000) (citation omitted).

Here, the arbitration clause states in relevant part:

> 10.1 Dispute Resolution.  **All disputes arising in connection with the Contract** shall be settled, if possible, by negotiation of the parties.  If settlement cannot be reached by negotiation, then the dispute shall be finally settled by arbitration without recourse to common or commercial courts.

T&C § 10.1 (emphasis added).

The Court must bear in mind that "when phrases such as 'any claim arising out of' appear in an arbitration provision, they are given a broad construction, and typically suggest that a given dispute is within the scope of an arbitration provision." Townsend v. Pinnacle Entm't, Inc., No. 11-1711, 457 Fed.Appx. 205, 2012 WL 75968, at *3 (3d Cir. 2012).  See, e.g., Brayman Constr. Corp. v. Home Ins. Co., 319 F.3d 622, 625 (3d Cir. 2001); Battaglia, 233 F.3d at 727.  Because of such expansive language, if the underlying factual allegations in the complaint "touch matters" covered by the contract containing the arbitration clause, then those claims are arbitrable, notwithstanding the legal labels for those claims.  Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth Inc., 473 U.S. 614, 625 n. 13, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985); Derbin v. Access Wealth Management, LLC, No. 11-812, 2011 WL 4751992, at *11(D.N.J. Oct. 7, 2011) (finding that arbitration provision containing "arising out of" language "establishes a broad parameter").

24

The Court finds that all claims asserted against ETS in this case may properly be brought in arbitration as a matter of law.   Newark Bay's complaint alleges counts of (i) breach of contract, (ii) breach of express warranty, (iii) breach of implied warranty of merchantability, (iv) breach of implied warranty of fitness for an intended purpose, (v) negligence, (vi) products liability, and (vii) gross negligence.   (Compl. ¶¶ at 38-80).   Legal labels aside, all the above-described counts relate to the performance, or non-performance, of the agreement and ETS' allegedly defective work thereunder.   More specifically, all of Plaintiff's claims are premised upon substantially similar factual allegations – *i.e.,* the loss sustained by Newark Bay as the result of ETS' alleged failure to reverse engineer, design, manufacture and/or fabricate the diaphragms installed in CT2 in accordance with the original Westinghouse design and specifications.   These factual allegations necessarily "touch matters" covered by the parties' March 30, 2007/April 2, 2007 agreement and the ETS T&C which have been incorporated by reference into that agreement.   Mitsubishi Motors Corp., 473 U.S. at 625 n. 13; Epix Holdings Corp. v. Marsh & McLennan Co., 410 N.J. Super. 453, 472-73, 982 A.2d 1194 (App.Div. 2009). To that end, the Third Circuit instructs district courts to construe broad arbitration provisions to encompass claims going to the formation of the underlying agreement.   Battaglia, 233 F.3d at 727.   Lastly, with respect to Plaintiff's counts sounding in tort, in New Jersey, "as a general rule, courts have construed broadly worded arbitration clauses to encompass tort, as well as contract claims."   Alfano v. BDO Seidman LLP, 393 N.J.Super. 560, 575, 925 A.2d 22 (App.Div. 2007) (citing Bleumer v. Parkway Ins. Co., 277 N.J.Super. 378, 402-08, 649 A.2d 913 (Law Div. 1994)).   See Wassertsein v. Kovath, 261 N.J.Super. 277, 286 (App.Div. 1991) ("Notwithstanding

the language of the Wassersteins' complaint sounding in tort, the complaint essentially arises in contract rather than tort and is governed by the contract.").

For purposes of the instant motion, the Court need not determine when the allegedly defective work occurred.  In its opposition, Plaintiff argues that ETS' motion is premature due to material issues of fact regarding when the conduct giving rise to Plaintiff's allegations in its Complaint occurred.  (Pl.'s Opp. Br. at 12).  Specifically, Newark Bay contends that the factual record before this Court does not allow us to conclude that ETS' allegedly negligent work was performed pursuant to the April 2, 2007 Purchase Order and corresponding March 30, 2007 proposal.  (Id.).  However, the broad scope of the arbitration provision – i.e., the "all disputes arising in connection" language covers all three transactions and does not require this Court, at this juncture, to make this determination.  The Court acknowledges that the December 15, 2006 Purchase Order and February 16, 2007 Purchase Order do not contain references to the ETS T&C.  Accordingly, the Court explicitly notes that it does not decide whether the ETS T&C apply to these Purchase Orders.  Neither Newark Bay nor ETS has presented case law with respect to retroactive application of terms and conditions nor have the parties had an opportunity to engage in the discovery likely required to determine, with certainty, what caused the CT2 compressor to trip.  That being said, this potential uncertainty does not impact this Court's threshold analysis.

In sum, all disputes arising in connection with Plaintiff's case fall within the scope of the ETS arbitration provision.  Plaintiff has failed to rebut the presumption of arbitrability.  This Court is not persuaded that it may be said with positive assurance that the ETS arbitration provision is not susceptible of an interpretation that covers the asserted dispute.  Century Indem.

Co., 584 F.3d at 524.   In accordance with Third Circuit precedent, Plaintiff's disputes are arbitrable and an order to arbitrate may not be denied.

### C.  Waiver

Lastly, Newark Bay argues that ETS waived its right to demand arbitration.  (Pl.'s Opp. Br. at 12-14).  In support, Newark Bay states that on March 29, 2011, Plaintiff sent ETS a notice letter advising Defendant that "[i]f we do not hear from you concerning proposed settlement within fourteen days from the date of this letter, we will presume that ETS would prefer to litigate."  (Id.).  ETS did not respond to Plaintiff's demand nor raise the issue of arbitration. (Id.).  Accordingly, Newark Bay contends that said conduct constitutes a knowing waiver of ETS' right to arbitrate.  (Id. at 13).

"Consistent with the strong preference for arbitration in federal courts, waiver is not to be lightly inferred, and waiver will normally be found only where the demand for arbitration came long after the suit commenced and when both parties had engaged in extensive discovery." PaineWebber, Inc. v. Faragalli, 61 F.3d 1063, 1068-9 (3d Cir. 1995) (internal quotations and citations omitted); Great Western Mortgage Corp. v. Peacock, 110 F.3d 222, 233 (3d Cir. 1997). The Third Circuit has stated that "prejudice is the touchstone for determining whether the right to arbitrate has been waived."  Hoxworth v. Blinder, Robinson & Co., Inc., 980 F.2d 912, 925 (3d Cir. 1992).[5]

---

[5]  The nonexclusive list of factors relevant to the prejudice inquiry include:  "[1] the timeliness or lack thereof of a motion to arbitrate . . . [; 2] the degree to which the party seeking to compel arbitration has contested the merits of the opponent's claims; [3] whether that party has informed its adversary of the intention to seek arbitration even if it has not yet filed a motion to stay the district court proceedings; [4] the extent of its non-merits practice; [5] its assent to the court's pretrial orders; and [6] the extent to which both parties have engaged in discovery."  Hoxworth, 980 F.2d at 926-27 (internal citations omitted).

Nothing in the record suggests that Newark Bay has suffered prejudice such that ETS may be deemed to have waived its right to arbitrate. Instead, ETS filed its initial motion to compel arbitration just over two months after the litigation commenced. ETS filed no other responsive pleading. (Def.'s Reply Br. at 12). Furthermore, the Court has yet to schedule an initial scheduling conference and the parties have not engaged in any formal exchange of discovery. Although the length of the time period involved alone is not determinative, Newark Bay has failed to show what adverse effects, if any, it suffered within that short period of time. Accordingly, the Court finds that ETS did not waive its right to arbitrate. See Palcko v. Airborne Express, Inc., 372 F.3d 588, 598 (3d Cir. 2004) (finding that 38-day delay, while not determinative, did not establish waiver where opponent of arbitration failed to demonstrate prejudice); Wood v. Prudential Ins. Co., 207 F.3d 674, 680 (3d Cir. 2000) (holding that short delay of one-and-a-half months and lack of significant steps in litigation that could have caused prejudice to plaintiff counsel against finding waiver).

**IV.     Conclusion**

For the reasons stated above, this Court respectfully recommends that Defendant's Motion to Compel Arbitration be **GRANTED.** Pursuant to L. Civ. R. 72.1(c)(2), the parties have fourteen (14) days from receipt hereof to file and serve objections.


s/Cathy L. Waldor
**Cathy L. Waldor, U.S.M.J.**